Jason Carr appearing on behalf of appellant Timothy Weaver Bradley. May I reserve some time for rebuttal? Yes, but you have to help keep track of your own time. Acknowledged. This case in many ways is about what effect, if any, the recent rule change to Rule 24C of the Federal Rules of Criminal Procedure had upon the jury deliberations in this case, and ultimately about what really needs to be answered here is did Mr. Bradley receive a fair deliberation of his guilt or innocence. And we would submit that he did not under both formulations of the rule. What's interesting about this case is that the old Rule 24C said that jurors' alternates had to be discharged after deliberations began. The rule never said or never prescribed bringing any of those alternates back should one of the regular jury members have to be discharged. That was kind of a common law embellishment, and everybody believed that that flowed from the rule. And there's a long line of case law going back to the 50s that talks about this. But are we applying the old rule or the new rule? Under the old rule. Just to give context to this. Oh, okay. All right. And under the old rule, though, what the case has said was, look, the language says the alternates have to be discharged, and also there are very strong policy reasons for not bringing back an alternate after deliberations. And the cases talk about these strong reasons. And one of the best examples of that is the off-balance decision. But this is not an old rule case. Excuse me? This is not an old rule case. And why talk about the policy behind the old rule when we have a new rule? Because, well, Your Honor, there is a question over whether the rule change altered the old common law rule. Now, you could say that it's obvious, but the point I'm trying to make here is that there are very strong old policy reasons, aside from the rule's language as to why we didn't bring back alternates. And the case is something – and Lamb – But the new rule says the court may retain alternate jurors after the jury retires to deliberate. I mean, it just replaces all of that. Well, I understand the court's position on that. And the Miller v. Gammy en banc case at 28G8 really gives you the framework over whether the common law embellishment, the Rule 24C that's articulated in McFarland and Beard has been overruled by the rule change. Maybe it has. But the point I'm trying to make here is that there were strong policy reasons for not bringing back an alternate. When they changed the language of 24C, they tried to address some of those policy reasons by saying, OK, if an alternate is substituted, you must begin deliberations anew. Those are arguments that should be addressed to the Rules Committee, right, when they're – you know, when they're contemplating amending the rule. I mean, you can't address the policy arguments here. It's too late. Well, Your Honor, but the policy – the reason why the policy reasons are still relevant here is because this ameliorative language of must begin deliberations anew is very, very important, because that ameliorative language is – We agree, and district court so instructed the jury. No, it didn't, Your Honor. I would submit that it didn't. The district court did say, OK, you must begin deliberations anew. The very next breath, what does the district court say? Well, yesterday, you guys were all deadlocked, and this deadlock is something we need to address here, and it's very important for you to reach a verdict. And it goes on and reads this modified duty to deliberate slash Allen charge to the jury. And our position here is that if this jury was supposed to begin deliberations anew, it is clearly erroneous, a clear abuse of discretion to read them an Allen charge before they begin deliberations. And what our position here is this jury never began deliberations anew. What we had was a midstream substitution of an alternate midway through deliberations. Wait a minute. Wait a minute. Didn't the judge tell them, as you say, because he said this in the next breath, in the first breath, didn't he tell them they should begin deliberations anew? He said, yeah, in the – Yeah, yeah, right. He did say it. But I'm submitting – Now, just a minute. Let me ask my next question now. Don't the cases say that an Allen charge is properly given at the beginning of deliberations? No, no. That's one of the alternatives? You can give it at the beginning or when there's a deadlock? No. I mean, if you look at the government – You disagree with that as a rule of law? Yes, I dispute that as a rule of law. But I would submit that it is highly improper to read a jury an Allen charge before it even begins deliberations. In fact, if you look at the government's brief, case 22 of the answering brief, they talk about basic Allen charge law and all the cases say things like a district court is not required to accept the judgment of a jury. That is hopelessly deadlocked. Then it can read an Allen charge. The Ninth Circuit jury instruction, 7.7, says it should be used only with great caution. And it's always meant to just be read to a jury once and only one time that says it's deadlocked. To do it before the jury even begins deliberations is very – All those cases will concern only an Allen charge given after deliberations begin. Right? Right. They don't concern giving – you know, in other words, you see, I think the case is, hey, the court can include an Allen charge with, you know, the other charges at the beginning of the case. That's an important point, Your Honor. Included in the standard jury's – Well, you agree with me now? Partly, but let me explain. In the jury instruction packet, there is this – that the standard jury instructions that are read to a jury, that were read to this jury before deliberations, there's an instruction called duty to deliberate. And it's instruction 7.1 of the model jury instructions, and it's embedded in this packet, and the judge reads the jury all these instructions, and one of them is this duty to deliberate, which sounds an awful lot like an Allen charge. But what makes an Allen charge an Allen charge is the timing and emphasis. Here the judge brings the jury – the reconstituted jury together and says, okay, you must begin deliberations anew. But by the way, yesterday you were deadlocked, and this deadlock is a matter of concern. It's very important that you reach a verdict, and he reads them this modified Allen instruction, which includes this language, like it's very important for you to read a verdict. An important part of this record, too, is if you look at – except for record 226, what happens, you know, the jury's deliberating all day, they're sending out these notes, what's reasonable doubt, does it require concrete evidence. All these two notes come out. Finally, after six hours, the jury's deadlocked, right? The judge brings everybody back in, including the alternates, and says, okay, here's what happened today. You all had all these questions about reasonable doubt. You were deadlocked. I'm going to send you all home. The alternates are there. The judge is telling them what happened. They're part of this whole process. The next day, the whole jury panel, including the alternates, is back. The judge explains that one of these jurors had to go on substituting somebody, and then he gives them the instructions saying you must begin anew. So our whole point here is that the jury never did begin deliberating anew. This did not happen because the judge never gave them unequivocal instructions to that effect. He gave them this instruction that said, on one hand, begin anew, on the other hand, but here's all the things that happened yesterday, and you need to deal with that. I mean, that's the whole coercive problem here. This is what made the Allen charts coercive. And another important aspect of this is, in a way, the juror, the alternate juror who was substituted, is singled out here. The judge explains to them that, oh, everybody's deadlocked. The next day, he comes back, moves somebody, puts in the alternate, and said, okay, you guys were deadlocked, but you need to reconsider this again. So this juror could very well have had the impression that he was brought in to end this deadlock, and that's a fair inference that can be raised. Wait a minute. Wait a minute now. I mean, that assumes that the alternate replaced a holdout juror, and there was only one holdout. Which is probably what happened. We don't know that on the record. That's just rand speculation. I would say it's a reasonable inference based on the chronology of events here. Even in the Lamb case, this court recognized that holdout jurors have a strong incentive to try to get out of the proceedings. And in Lamb, this en banc court said, be careful of this, that when there's a holdout juror, he's going to come up with these, which, in this case, a pretty weak excuse to get off the jury because he wants to get out of the pressure. He wants to get out of being under the pressure of all the jurors trying to get him to change his or her mind. But I'm not saying that that's necessarily what happened. What I'm saying is that this record raises a strong inference and very well could have raised a strong inference in the alternate juror's mind that he was brought into this proceeding specifically to break the deadlock. And the Allen charge that the judge read the jury, the reconstituted jury, gives strong support to that assertion. I'd like to reserve the rest of my time for rebuttal if I may. Thank you. I may please the Court. Good morning. My name is Andrew Duncan. I'm an assistant U.S. attorney for the District of Nevada, and I represent the United States in this matter. As the Court is aware, the first issue before the Court is the issue in regard to the replacing of the regular juror with the alternate juror and whether or not that was plain error on the part of the trial judge in this case. As the Court made clear, the Court understands that this case falls after the 1999 amendment to Rule 24C. Before 1999, the rule stated that the judge shall release the alternate jurors. However, in 1999, that was amended, and now the rule specifically states that the judge can keep the alternates present, and in the comments of the rule, it specifically states that the judge, the court, shall have the discretion to decide whether or not to retain or discharge the alternates or whether or not to replace one of the jurors with an alternate. And that language is important. It says that the court shall have the discretion. Assuming arguendo, that somehow the McFarland does control in this case, opposing counsel can't even get over that barrier. There is no prejudice in this case. Opposing counsel has argued that somehow this, the McFarland. How do we measure, how do we test prejudice? What's the basis upon which you can assert there's no prejudice? I don't think there's anything here that they can show that there was any prejudice. I think the case law has recognized that it is difficult to determine exactly what prejudice is, but in this case, they're arguing that this is a so-called Allen charge. It's our position that putting it in that posture isn't even correct, that this isn't an Allen charge. There's nothing in the charge that the judge gave to the jury where he talks about the minority jurors or what the minority jurors should do. He's essentially giving them the standard instruction dealing with the duties of a juror. Help me with what happened here. There was an objection to giving an Allen charge. That's correct. What happened was trial counsel for the defendant did object to an Allen charge, and then the judge read the charge to her, which essentially did not include the, what I'll call, I think what the case law's called, the dynamite language of the Allen charge, which is an instruction to the jurors who are in the minority vote as to how they should deliberate and consider their deliberations. In this case, the judge removed that specific part of the charge and essentially just reread the standard instruction as to how jurors are to deliberate in this case. It was after trial counsel for the defendant heard that the judge was not going to read that portion of it that she had no objection at that point. So it's the government's contention that the defendant cannot show any prejudice, but it's certainly our position that we need not get to that point, because under the new Rule 24C, the court was allowed within his discretion to do exactly what he did, and that is to make a determination that one of the regular jurors should be replaced by an alternate. Assume just for the sake of argument, and I understand your argument that this really wasn't an Allen charge, but just assume that it was categorized as that. Doesn't counsel have a very good point that you don't give the Allen charge at the beginning of deliberations? In effect, this is a whole new deliberations that is about to occur. I do believe there is case law in the circuit. I think the Beatty case in particular that's cited in our brief, not for this proposition, states that even if an Allen charge is premature, that does not necessarily mean it's coercive. When the courts have looked at the Allen charge, the key analysis is whether or not the Allen charge was coercive. And in this case, when you read that as a whole, the charge was in no way coercive to the jury. So it's our position that even if the court did determine that this was the so-called Allen charge, it being read at this time, it was not coercive in the way it was read and the language in the charge, and therefore it was okay at this point. Thank you. Any further questions? Thank you. Regarding the substance of the charge, the judge read the jury. He said himself it was an amalgamation of the Allen charge, model Allen charge 7.7, and the duty to deliberate instruction. In some ways, I would submit the instruction he read was even worse than the Allen charge instruction, the 7.7, because it has this stronger language saying it is important that you reach a verdict and so on and so forth. So what the judge read. Right. Then wasn't there an effective assistance of counsel? Your Honor, stay tuned for that. I will note this trial attorney was not part of my office, I will say. I wish he'd objected to everything. It would have made this case a lot better. There's no way you should have let that hold out to her or go. Anybody with any instincts should have known what was going on. She let that juror go with hardly any reason at all. Again, we're assuming it's the holdout, right? Well, if it were me, if I would have been the trial attorney, there's no way I would have let that person go. I would have screamed and jumped up and down to keep that person on the jury. But there's nothing I can do about that now. But the one other point I'd like to make is that the prejudice here by the chronology of events leads to an inference that this was a very coercive charge. And what the case law says you need to look at all facts and circumstances. What I would submit is that this court looks carefully at the chronology, what the judge told the jurors, including the alternates, the way that the alternate was substituted in, the way that the judge read him an Allen charge, gives this whole thing a very, very coercive effect under these unique facts and circumstances. And with that, I would ask this court to remand this matter and give Timothy Weaver Bradley a new trial, a fair trial. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Tashima